UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-389 (DSD/JGL)

Anthony J. Bauer and
Ann M. Bauer,

Plaintiffs,

v.

**ORDER**

Ford Motor Credit Company,
John Doe 1 - John Doe X

Defendants.

Paul A. Sortland, Esq. and Sortland Law Office, 33 Sixth Street South, Suite 4100, Minneapolis, MN 55402, counsel for plaintiffs.

Vernle C. Durocher, Jr., Esq., Thomas L. Nuss, Esq. and Dorsey & Whitney, Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court on the defendant's motion for summary judgment. Based on a review of the file, record, and proceedings herein, the court grants defendant's motion.

**BACKGROUND**

Anthony J. Bauer and Ann M. Bauer ("plaintiffs" or "Bauers") bring this lawsuit against Ford Motor Credit Company ("defendant") alleging defendant violated various federal and state laws in attempting to collect a debt owed by Nadine Jackson, a woman unknown to plaintiffs.

FILED 4-24-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. 4-24-01
Deputy Clerk's Initials SR

In March 1998, defendant began sending collection letters to plaintiffs' home and leaving messages on plaintiffs' answering machine regarding Jackson's automobile loan. The various communications indicated that defendant believed Jackson was married to Tony Bauer and lived with him in Caledonia, a small town in southeastern Minnesota. From mid to late March, plaintiffs called defendant twice to advise it that they did not know Jackson. Plaintiffs also asked their friend, Houston County Sheriff Michael Lee, to intercede on their behalf. Defendant's contact log indicates that on April 1, 1998, Lee phoned defendant and advised that Nadine Jackson does not live in Caledonia.

Despite receiving these calls from plaintiffs and Lee, defendant continued to pursue collection from plaintiffs. Defendant's contact log indicates that at least nine additional phone calls were made during the months of April and May, including calls to plaintiffs' neighbors, relatives and employers. Every individual that defendant reached indicated that Tony Bauer was married to Ann Bauer, and that Nadine Jackson or Nadine Bauer was unknown to them. In addition, on May 14, 1998, the postmaster of Caledonia advised defendant that no one named Nadine Jackson lived at plaintiffs' address.

Defendant nevertheless hired both a private investigation service and a repossession agency to engage in further collection efforts. On August 18, 1998, an employee of the repossession

agency showed up at the Bauer home to repossess an automobile, but left after Ms. Bauer summoned the Houston County Sheriff for assistance. Plaintiffs filed a lawsuit in Houston County District Court which was removed to federal court on the basis of diversity and federal question jurisdiction.

In June 2000, this court granted in part defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismissed plaintiffs' claims for Fair Debt Collection Practices Act violations, deceptive trade practices, harassment, stalking and intentional infliction of emotional distress. Defendant now moves for summary judgment on the remaining claims of defamation, negligent infliction of emotional distress, invasion of privacy - intrusion upon seclusion and invasion of privacy - publication of private facts.

**DISCUSSION**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating to the court that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute

is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 250.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. However, the nonmoving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23. With this standard at hand, the court considers defendant's motion.

**I. Defamation**

To prevail on a claim for defamation, a plaintiff must "prove that a statement was false, that it was communicated to someone besides the plaintiff, and that it tended to harm the plaintiff's reputation and to lower him in the estimation of the community." Richie v. Paramount Pictures Corp., 544 N.W.2d 21, 25 (Minn. 1996) (quoting Rouse v. Dunkley & Bennett, P.A., 520 N.W.2d 406, 410 (Minn. 1994)); Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980).

Plaintiffs contend that in various phone calls to neighbors and relatives, defendant stated or at least implied that the Bauers

were experiencing financial and marital problems. The evidence fails to support this allegation. For example, at her deposition, plaintiffs' neighbor Gail McCormick recalled that when defendant phoned her, the caller was persistent in her inquiries, but made no affirmative statements regarding the Bauers' financial or marital situation. She testified:

> Q. What do you remember about that phone call?
>
> A. The conversation consisted of a woman that called me and asked me if I knew Tony and a Nadine Bauer. And my answer to her was, "No, I do not know a Tony and Nadine Bauer. I know a Tony and Ann Bauer." And she continued to ask me, "Are you sure you do not know a Tony and Nadine Bauer?" I said, "No, I know a Tony and Ann Bauer." And I think she asked me how I knew Tony and Ann Bauer and I said that they were my neighbors.

(Nuss Aff., Exh. F, pp. 5-6).

Similarly, Sara Bauer, a cousin of Tony Bauer who also received a call from defendant, testified:

> Q: What do you remember about that phone call?
>
> A: The individual asked me if I knew a Tony and Nadine Bauer, and I had stated no. And then she said Tony and Nadine Bauer of Route 3, and then she gave some box number, Caledonia. And they don't live far from my parents, so I knew they were Route 3. I said, "I know Tony and Ann Bauer of Caledonia, they're my cousins." And she had said, "You mean Tony and Nadine?" And I had stated, "No, Tony and Ann" a couple of times to her. Or him. I don't remember if it was a female or a male.

(Nuss Aff., Exh. E, pp. 5-6).

According to this unequivocal testimony, defendant made no statements to indicate that plaintiffs were experiencing marital or

financial troubles. Plaintiffs emphasize Sara Bauer's testimony that defendant's representatives implied or perhaps even stated that Tony Bauer must be divorced from Nadine if he was now married to Ann. (Nuss. Aff., Exh. E, p. 12). Plaintiffs also assert that both Sara Bauer and Gail McCormick later asked Ann Bauer if plaintiffs were delinquent on their car payments. (Sortland Aff., Exh. C, pp. 17, 22). However, Sara Bauer knew that her cousin had no relationship with a woman named Nadine and her apparent assumption that plaintiffs were having trouble making car payments was based only upon the fact that the caller was Ford Motor Credit Company rather than from any statement made by the caller. (Nuss Aff., Exh. E, p. 11). As for McCormick, she specifically testified that she did not believe the Bauers were experiencing financial problems. (Nuss Aff., Exh. F, pp. 7). Significantly, both Bauer and McCormick stated that the telephone inquiries had no impact whatsoever on their opinion of plaintiffs. McCormick testified:

> Q: Did you think that Ann or Tony Bauer were having any financial problems?
>
> A: No. Not at all.
>
> Q: Did your opinion of Tony or Ann Bauer change after that phone call from Ford Credit?
>
> A: No. Huh-uh. Not at all.

(Nuss Aff., Exh. F, pp. 7).

Sara Bauer asserted:

Q: ... Since that phone call from Ford Credit, have you ever heard any other statements regarding Tony and Nadine?

A: No.

Q: Have you heard any statements from people regarding the Bauer's (sic) financial situation?

A: No.

Q: After the phone call you received from Ford Credit, did your opinion of Ann and Tony change?

A: No.

(Nuss Aff., Exh. E, p. 10). This testimony is fatal to plaintiffs' defamation claim.

Plaintiffs attempt to shore up the claim by arguing that defendant's statements to Bauer, McCormick and others generated substantial gossip in the small town of Caledonia and that defendant is liable for this re-publication of defamatory statements. Notwithstanding the scant evidence that defendant even made false statements about plaintiffs, the simple fact remains that plaintiffs have produced no evidence that anyone (including people who never spoke to Ford Motor Credit Company) lowered their opinion of plaintiffs in any way. Under those circumstances, defendant cannot be held liable for defamation. Bol v. Cole, 561 N.W.2d 143, 146 (Minn. 1997) ("For a statement to be defamatory ... it must tend to harm the plaintiff's reputation.") Accordingly, the court grants defendant's motion for summary judgment as to the defamation claim.

**II. Negligent Infliction of Emotional Distress**

Plaintiffs do not claim that defendant's conduct has caused them physical injury, therefore, as the court indicated in its order on the motion to dismiss, plaintiffs must allege a direct invasion of their rights such as defamation, malicious prosecution, or other willful or malicious conduct in order to seek damages for emotional distress. See State Farm Mut. Auto. Ins. Co. v. Village of Isle, 122 N.W.2d 36, 41 (Minn. 1963); Bohdan v. Alltool Mfg. Co., 411 N.W.2d 902, 907 (Minn. Ct. App. 1987). See also Schiele v. Charles Vogel Mfg. Co., Inc., 787 F. Supp. 1541, 1555 (D. Minn. 1992) (Doty, J.) (following Bohdan and allowing plaintiff in a defamation action to maintain a separate claim for negligent infliction of emotional distress).

The only claim in this case upon which emotional distress damages can be based is the defamation claim. Because the court has dismissed that claim on summary judgment, the court must also grant summary judgment as to plaintiffs' negligent infliction of emotional distress claim.

**III. Invasion of Privacy - Publication of Private Facts**

Defendant also seeks dismissal of plaintiffs' claim that defendant invaded their privacy by publicizing private facts about their marriage and finances. The tort of invasion of privacy by publication of private facts occurs when a party "gives publicity to a matter concerning the private life of another ... if the

matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998)(quoting Restatement (Second) of Torts § 652D). As discussed above in the context of the defamation claim, the evidence before the court does not support a conclusion that defendant revealed any "facts" about plaintiffs. In addition, plaintiffs have failed to satisfy the publicity requirement of this claim.

According to the Restatement, the term "publicity" is to be narrowly construed. "'Publicity' ... means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge ... Thus it is not an invasion of the right of privacy ... to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." Restatement (Second) of Torts § 652D cmt. a.

The evidence in this case indicates that defendant contacted only four neighbors or relatives and one employer. This limited number of contacts is insufficient to satisfy the publicity requirement. See C.L.D. v. Wal-Mart Stores, Inc., 79 F. Supp. 2d 1080, 1084 (D. Minn. 1999) (citing extensive state court dicta in holding that employer's disclosure of plaintiff's abortion to a few co-workers did not constitute publicity sufficient to maintain an action for invasion of privacy). Plaintiffs emphasize that in the

small town of Caledonia, Minnesota, defendant's statement and insinuations were certain to reach a larger public. However, as the court noted in its order on the motion to dismiss, sustaining plaintiffs' invasion of privacy claim on the basis of gossip "would effectively eviscerate the requirement that the defendant be the one to have publicized the private information. If this approach were adopted, almost any form of gossip would be actionable, regardless of the discretion taken in its initial communication." Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126, 132 (S.C. 1999).

Finally, there is no indication that any facts have been disclosed to those persons with whom the plaintiff has "a special relationship" thereby rendering the disclosure "just as devastating as disclosure to many." Miller v. Motorola, Inc., 560 N.E.2d 900, 903 (Ill. Ct. App. 1990); see also McSurely v. McClellan, 753 F.2d 88, 112 (D.C. Cir.), cert. denied, 474 U.S. 1005 (1985); Beaumont v. Brown, 257 N.W.2d 522, 531 (Mich. 1977) overruled in part on other grounds by Bradley v. Board of Educ. of Saranac Community Schs., 565 N.W.2d 650 (Mich. 1997). The four people contacted by defendant have known plaintiffs for many years and they did not receive defendant's inquiries as a revelation of secret facts which devastated their relationship with plaintiffs. For these reasons, defendant is entitled to summary judgment on plaintiffs' claim of publication of private facts.

**IV. Invasion of Privacy - Intrusion Upon Seclusion**

Finally, defendant challenges plaintiffs' claim that defendant invaded their privacy by intruding into their private affairs. The specific tort of intrusion upon seclusion occurs when one "intentionally intrudes physically or otherwise upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." Lake, 582 N.W.2d at 233 (citing Restatement (Second) of Torts § 652B (1977)). The Restatement explains:

> There is ... no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

Restatement (Second) of Torts § 652B cmt. d.

The intrusion upon seclusion tort was first recognized in Minnesota in 1998 and as such, its contours are not yet well-defined by the courts of this state. In Lake, the Minnesota Supreme Court concluded that plaintiffs' discovery that Wal-Mart employees had disseminated throughout the community several nude photographs that plaintiffs had taken to Wal-Mart for processing

was sufficient to state a claim for invasion of privacy, including intrusion upon seclusion. Lake, 582 N.W.2d at 233.

By contrast, in Walker v. Minnesota Mining & Mfg., No. C4-99-1715, 2000 WL 520254 (Minn. Ct. App. May 2, 2000), the Minnesota Court of Appeals rejected plaintiff's allegations that his rehabilitation counselor invaded his protected privacy by acquiring medical records, accompanying him to treatment appointments and sharing information from medical reports with his supervisor at 3M. The court concluded that the counselor's conduct was "petty and totally unworthy of a professional, but not sufficiently analogous to the circumstances in Lake to withstand summary judgment ... Courts are not empowered to fashion and enforce remedies for callous, boorish, or petty behaviors." 2000 WL 520254 at *7 . These cases suggest that the question before this court is whether a reasonable jury could conclude that defendant's conduct exceeds "callous" and "boorish" unprofessionalism and rises to the level of the type of "highly offensive" conduct present in Lake.

Plaintiffs vigorously contend that the offensiveness of defendant's conduct cannot be minimized and that any reasonableness defendant may have had in making its initial calls evaporated after it was informed by the Bauers, the sheriff, the postmaster and others that Ford Credit was mistaken. The court agrees that defendant's decision to send out a repossession agent after

receiving conclusive confirmation from reliable sources that it had mistakenly targeted the Bauers merits sharp reprimand. However, the court must also consider that the sum total of defendant's conduct over a five-month span involves leaving four messages on plaintiffs' answering machine, making phone contact with four neighbors or relatives and one employer, and instigating one repossession attempt. Viewed in its entirety, the court concludes that this conduct does not amount to "a course of hounding the plaintiff[s], that becomes a substantial burden to [their] existence," Restatement (Second) of Torts § 652B, cmt. d, and does not meet the "highly offensive" standard required to support an intrusion upon seclusion claim. Summary judgment as to the intrusion upon seclusion claim is granted.

**V. Appeal of Order Regarding Punitive Damages**

On November 22, 2000, Magistrate Judge Jonathan Lebedoff granted plaintiffs' motion to amend their complaint to add a claim for punitive damages. Defendant appealed. [Doc. No. 50]. The court's dismissal of plaintiffs' claims on summary judgment renders that matter moot, therefore the appeal is dismissed.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment [Doc. No. 52] is granted.

2. Counts I, II, III and IV of plaintiffs' second amended complaint are dismissed with prejudice.

3. Defendant's appeal of Magistrate Judge Jonathan Lebedoff's order of November 22, 2000, regarding punitive damages [Doc. No. 50] is dismissed as moot.

4. Count V of plaintiffs' second amended complaint for punitive damages is dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**[1]

Dated: April 23, 2001

David S. Doty, Judge
United States District Court

[1] Because no John Does have been identified during the course of this lawsuit, dismissal of the entire case upon the motion of defendant Ford Motor Credit Company is appropriate.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd