UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-389 (DSD/JGL)

Anthony J. Bauer and
Ann M. Bauer,

Plaintiffs,

v.

**ORDER**

Ford Motor Credit Company,
John Doe I - John Doe X,

Defendants.

Paul A. Sortland, Esq. and Sortland Law Office, 33 Sixth Street South, Suite 4100, Minneapolis, MN 55402, counsel for plaintiffs.

Vernle C. Durocher, Jr., Esq., Thomas L. Nuss, Esq. and Dorsey & Whitney, Pillsbury Center South, 220 South Sixth Street, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court on the plaintiffs' motion for reconsideration of the dismissal of their claim for invasion of privacy - intrusion upon seclusion. Based upon a review of the file, record and proceedings, the court grants plaintiffs' motion.

**BACKGROUND**

The factual background of this case has previously been set forth in this court's orders on defendants' motion to dismiss and defendants' motion for summary judgment. In short, beginning in

FILED 7-17-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

March of 1998, plaintiffs Tony and Ann Bauer began receiving letters and phone calls from defendant Ford Motor Credit Company regarding the delinquent account of a woman named Nadine Jackson. Plaintiffs advised defendants on numerous occasions that Nadine Jackson did not live at plaintiffs' residence and was unknown to plaintiffs. The Houston County Sheriff and the local postmaster also advised defendants that Nadine Jackson did not live at the Bauer residence. Nevertheless, defendants persisted in their collection efforts, including placing calls to plaintiffs' neighbors, relatives and Ann Bauer's employer.

In June of 1998, plaintiffs hired an attorney who called and wrote a letter to defendants, informing defendants that Nadine Jackson did not live at the Bauers' address. Plaintiff Ann Bauer asserts in her deposition that the collection calls continued despite these efforts, culminating in a repossession attempt at the Bauer home in Caledonia, Minnesota. On that occasion, the repossession agent arrived first at the residence of a neighbor, who directed the agent to the plaintiffs' home. The neighbor also called plaintiffs, who in turn called the sheriff. When the repossession agent arrived, the sheriff turned the agent away. Defendants made no additional contact with plaintiffs concerning Nadine Jackson's account after the repossession attempt.

Plaintiffs filed a lawsuit in Houston County District Court, which was later removed to federal court. In June 2000, this court

granted in part defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and dismissed plaintiffs' claims for Fair Debt Collection Practices Act violations, deceptive trade practices, harassment, stalking and intentional infliction of emotional distress. In April 2001, this court granted defendants' motion for summary judgment on the remaining claims of defamation, negligent infliction of emotional distress, invasion of privacy - intrusion upon seclusion and invasion of privacy - publication of private facts. Plaintiffs now move for reconsideration of the dismissal of the invasion of privacy - intrusion upon seclusion claim, arguing that the court failed to properly account for the number of contacts by and between the parties and did not properly evaluate the context in which these contacts occurred.[1]

**DISCUSSION**

The specific tort of intrusion upon seclusion occurs when one "'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person.'" Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998) (quoting Restatement (Second) of Torts § 652B (1977)). "While what is 'highly offensive to a reasonable person' suggests

[1] Plaintiffs also sought reconsideration of the dismissal of the defamation claim, however, the court denied that request. (Doc. No. 63).

a standard upon which a jury would properly be instructed, there is a preliminary determination of 'offensiveness' which must be made by the court in discerning the existence of a cause of action of intrusion." Miller v. National Broad. Co., 232 Cal. Rptr. 668, 678 (Cal. Ct. App. 1986), rev. denied (Mar 11, 1997). Factors for the court to consider include the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded. Id. at 679.

In addition, the Restatement (Second) of Torts suggests that the court should also consider the number and frequency of the intrusive contacts, at least as part of its evaluation of the circumstances under which the intrusion occurs. As the Restatement sets forth:

> There is ... no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

Restatement (Second) of Torts § 652B cmt. d.

In concluding that defendants' actions did not constitute the sort of highly offensive conduct contemplated by the Restatement, this court characterized the contacts initiated by defendants as "leaving four messages on plaintiffs' answering machine, making phone contact with four neighbors or relatives and one employer, and instigating one repossession attempt" over a five-month span. (Doc. No. 60, p. 13). Plaintiffs argue on reconsideration that the correct tally includes six phone calls to the Bauer home in the spring, four letters to the Bauer home and repeated phone calls to the Bauer home over the course of the summer. Plaintiffs also emphasize that defendants placed several calls to plaintiffs' employer, contacted four neighbors or relatives and received numerous phone calls and letters from plaintiffs and people associated with them. Defendants dispute these numbers and argue that contacts to other persons, or contacts initiated by plaintiffs themselves do not constitute intrusion by defendants.

The court has carefully compared the parties' tallies to the record, paying particular attention to the contact log maintained by defendants at the time of the contacts. The log is difficult to interpret, however the court generally agrees with defendants that the log does not support plaintiffs' assertions regarding several contacts. For example, citing to the log, plaintiffs contend that defendants phoned their home on April 20, 1998. (Mem. In Support of Reconsid. at 3). However, on that date, the log references only

a phone call to the "Buyer Employer/Other Third Party," which the court interprets to mean the high school where Ann Bauer worked. (Sortland Aff. Exh. A).

Similarly, plaintiffs assert in their reconsideration brief that collection contacts continued throughout the summer of 1998, after defendants referred the matter to Confidential Services, an Ohio collection agency. Specifically, plaintiffs contend that Confidential Services "repeatedly call[ed] the Bauer residence, identifying itself as Ford Motor Credit Company." (Mem. in Support of Reconsid. at 5). However, their citation to the deposition of Ann Bauer does not effectively support that assertion:

> Q When did Ford Credit stop contacting you or anyone else regarding you or Nadine Jackson?
>
> A: I don't know for sure. I think it was after the repossession....

(Nuss Aff., Exh. A at 42).

The court has considered whether this creates a material fact dispute which precludes summary judgment, however the court notes that in Bauer's initial affidavit, in which she catalogued defendants' various collection efforts, she never once mentioned receiving phone calls throughout the summer of 1998. (Doc. No. 11, Bauer Aff.). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (holding that the nonmoving party may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial).

Therefore, the court concludes that the even when the evidence is viewed in a light most favorable to the nonmovant, it does not support plaintiffs' bare assertions regarding the number and frequency of the contacts.

Plaintiffs argue that the court must also consider the calls and letters initiated by plaintiffs or their representatives. Defendants correctly counter that any contacts initiated by plaintiffs themselves cannot be included in the tally of intrusive contacts. See Mlynek v. Household Fin. Corp., 2000 WL 1310666 (N.D. Ill. Sept. 13, 2000) ("[O]f the three phone conversations alleged in the instant case, two were initiated by plaintiff himself, making only one a truly unauthorized intrusion."). However, the court agrees with plaintiffs that the record of calls and letters to Ford initiated by plaintiffs and other members of their community are nevertheless relevant, in that they establish the context in which defendants' conduct must be judged.

Context is one of the several factors which a court considers when evaluating an invasion of privacy claim. Miller, 187 Cal. Rptr. at 679. The Supreme Court of Nevada has noted the "[t]he question of what kinds of conduct will be regarded as a 'highly offensive' intrusion is largely a matter of social conventions and expectations." PETA v. Bobby Berosini, Ltd., 895 P.2d 1269, 1281 (Nev. 1995) (citing J. Thomas McCarthy, The Rights of Publicity and Privacy, § 5.10(A)(2)). In addition, the New Mexico Supreme Court

has ruled that "improper conduct in knowingly and intentionally pursuing a person to force payment of a debt, whether or not he owes it, may, under certain circumstances, give rise to a right to damages for an invasion of privacy." Montgomery Ward v. Larragoite, 467 P.2d 399, 401 (N.M. 1970) (emphasis added).[2] These various recitations confirm that the court must give special regard to the circumstances under which the alleged intrusion occurred, and the expectations that a reasonable person would have under such circumstances.

The court believes that a reasonable person should expect that a company charged with collecting on a delinquent account would display a certain degree of persistence when the person on the other end of the telephone denies responsibility for a debt. However, in this case, plaintiffs advised Ford Motor Credit Company of its error and asked Ford to check and correct its records. When defendants continued to call and send letters, plaintiffs enlisted the help of the local sheriff, the postmaster and an attorney, all

[2] The facts in Montgomery Ward are somewhat analogous to the case at bar. In that case, the store received an application for a credit card from defendant's brother but issued the card under defendant's name at his brother's work address. The brother informed the store of the error but the store did nothing to change its records. The brother proceeded to make purchases on the card and later fell into arrears. The store then sued both defendant and his brother in an attempt to collect on the debt. Defendant counterclaimed for invasion of privacy and the jury found in his favor, awarding him $15,000 in damages. On appeal, the New Mexico Supreme Court upheld the jury's determination, concluding that the facts supported a verdict for damages. Montgomery Ward, 467 P.2d at 401.

of whom attempted to set the defendants straight. In addition, each neighbor and relative contacted by defendants advised the defendants that their information concerning Nadine and Tony Bauer was incorrect.

Under these circumstances, where defendants received multiple and highly reliable confirmations of the inaccuracy of its records, the court must agree that a reasonable person could regard defendants' continued persistence, culminating in a repossession attempt at plaintiffs' home, as "highly offensive" conduct. Therefore, based upon the court's further review of the record and its additional research on this vaguely-defined tort, the court reverses the grant of summary judgment in favor of defendants on the claim of invasion of privacy - intrusion upon seclusion and reserves the issue for a determination by the jury.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for reconsideration is granted.

2. The court vacates its prior judgment (Doc. No. 60) as to Count IV of plaintiffs' second amended complaint, and reserves the claim of invasion of privacy - intrusion upon seclusion for determination by a jury.

Dated: July 17, 2001

David S. Doty, Judge
United States District Court

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500